# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>JOSE D. ROCHA, )<br>)<br>Defendant. )<br>) | Civil Action No.<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff Securities and Exchange Commission ("the Commission") alleges the following against defendant Jose D. Rocha ("Rocha") and demands a jury trial:

## SUMMARY

1. From at least September 2020 through April 2022, Rocha deceived at least 13 investors into giving him at least $1 million dollars by promising to invest their money in securities of his choosing with returns of 12% *per month*. Instead, unbeknownst to his investors, Rocha spent the majority of the funds to feed his gambling habit and embark on a luxury lifestyle. Also unbeknownst to investors and contrary to what he was telling investors about their investment principal and returns, Rocha lost what was left of the investors' money through substantial investment losses in his personal brokerage accounts. To conceal his wrongdoing, Rocha made Ponzi-like payments to investors by using later investor money to pay small amounts to earlier investors to give the false impression their money was secure.

1

2. Rocha took the money from his investors under a series of false pretenses. First, Rocha touted that he was a successful investor, even offering online seminars in options trading to the general public. To the contrary, Rocha had only started investing in 2019 and consistently lost money.

3. Second, Rocha misrepresented to the investors that all their funds would be invested in securities. Instead, the majority of investor funds remained in Rocha's personal bank account.

4. Third, Rocha misrepresented that the invested funds were earning 12% monthly and investors could redeem their money in whole or in part, at any time. In reality, he had spent or lost almost all the investors' money.

5. Fourth, Rocha did not tell his investors that he would use their money to withdraw hundreds of thousands of dollars at casinos, take several high-end trips to Las Vegas and Florida, and purchase luxury goods and services.

6. Fifth, Rocha moved some investor funds into his personal brokerage accounts where he lost money trading. He did not tell his investors that he did not segregate or separately account for any of the investor funds or that he was trading their money at a loss.

7. When a few investors inquired about their money, Rocha fabricated account statements. These account statements contained fake account balances and repeated the bogus promise of 12% monthly investment returns. Rocha also falsely confirmed by text an investor's own 12% monthly return calculations. Rocha congratulated the investor on becoming a millionaire from having invested $211,000 with Rocha, when Rocha knew he had spent or otherwise lost all the investor's money.

8. By engaging in the conduct alleged, Rocha violated, and unless restrained and enjoined, will continue to violate, Section 17(a) of the Securities Act of 1933 (the "Securities Act"), Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 thereunder, and Sections 206(1) and 206(2) of the Investment Advisers Act of 1940 ("Advisers Act").

9. Based on these violations, the Commission seeks: (a) permanent injunctions; (b) disgorgement of Rocha's ill-gotten gains, plus prejudgment interest; (c) civil penalties due to the egregious nature of Rocha's violations; and (d) such other and further relief as the Court deems just and proper.

## JURISDICTION AND VENUE

10. The Commission brings this action pursuant to the enforcement authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)], and Section 209(d) of the Advisers Act [15 U.S.C. §80b-9(d)].

11. This Court has jurisdiction over this action pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u(e), 78aa], and Sections 209(d), 209(e) and 214 of the Advisers Act [15 U.S.C. §§80b-9(d), 80b-9(e), 80b-14].

12. Venue lies in this District pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], Section 27 of the Exchange Act [15 U.S.C. § 78aa], and Section 214 of the Advisers Act [15 U.S.C. §80b-14] because a substantial part of the acts constituting the alleged violations occurred in Massachusetts and Rocha resides in Massachusetts and transacts business here.

13. In connection with the conduct described in this Complaint, Rocha directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce.

14. Rocha's conduct involved fraud, deceit, or deliberate or reckless disregard of regulatory requirements, and resulted in substantial loss, or significant risk of substantial loss, to other persons.

## DEFENDANT

15. Jose D. Rocha, 37, is a citizen of the Republic of Cabo Verde who resides in Brockton, Massachusetts. Rocha has never been associated with any entity registered with the Commission. Rocha acted as an unregistered investment adviser for the investors described in this complaint by having induced investors to give him funds to invest in securities based in part on his touted investment experience and promised investment performance. As an investment adviser, Rocha owed his investors a fiduciary duty to, among other things, act for their benefit and exercise the utmost good faith in dealing with them, including making full and fair disclosure of all material facts and employing reasonable care to avoid misleading them.

## FACTUAL ALLEGATIONS

### A. Rocha Obtained Investor Funds under False Pretenses

16. Rocha started investing in securities in only the past few years. He opened his first brokerage account in October 2019, and reported investment transactions involving less than $4,000 that year on his federal income tax return.

17. In subsequent years, Rocha has conducted heavy day-trading activity in his personal brokerage accounts on margin, meaning that he borrowed money from his broker to place several purchases and sales of securities on a daily basis. For example, Rocha had approximately $2.5 million and $4.2 million annual volume of trades—meaning the total dollar

value of all trades placed in the year—in 2020 and 2021, respectively. Rocha reported investment losses of $70,000 and $201,000 on his federal income tax returns in 2020 and 2021, respectively, years in which the major stock market indices rose by double-digit percentages.

18. Rocha first accepted money from investors in or about September 2020. The investors did not meet collectively with Rocha to discuss investments and they had no role in purported investment decisions about their own money. Rather, Rocha told the investors he would unilaterally invest their money in securities based on his touted investment experience and success.

19. For example, Rocha has publicly offered seminars on options trading via YouTube on which he stated, among other things: "Options trading is a very difficult thing to learn as a beginner…In this video, my goal is to bring you from zero to hero in a few hours."

20. The investors did not sign any agreements, receipts, or other kinds of documents with Rocha regarding their investments, trusting him as their investment adviser to invest and protect their money.

21. Rocha did not specify any particular investment strategy with the investors—he falsely stated that he would use his personal brokerage account to invest their money entirely in securities of his choosing at a substantial profit. Rocha promised an exorbitant and overly consistent 12% monthly return on their investment. Rocha also promised the investors that all or part of their money would always be available for redemption at any time.

  **B. Rocha Did Not Invest Most of the Investors' Funds**

22. Rocha deposited the vast majority of the investor funds (which he received in the form of personal or cashier's checks) into his personal bank account. Rocha commingled the investor funds with his own personal funds. The investor funds were a substantial portion of his

bank account balance. Indeed, Rocha had no employment or other sources of income in 2020 or 2021.

23. During the time Rocha took in at least $1 million of investor money, he transferred less than half that amount to his personal brokerage accounts. Rocha transferred funds to his brokerage accounts at times and in amounts that did not correspond to when he received money from investors. Rather, Rocha continued to trade on margin and used investor funds to reduce his margin balance—*i.e.*, pay back his broker money he borrowed to trade. Rocha did not purchase securities on his investors' behalf at the time he moved their money into his personal brokerage account and never maintained separate accounts for his investors.

24. Rocha's trading in his personal brokerage accounts yielded substantial losses in 2020, 2021 and early 2022. For example, Rocha transferred $50,000 from his bank account to his brokerage account on July 20, 2021. The following day, Rocha purchased 101 shares of a stock at $940.60 per share. On September 3, 2021, Rocha sold those shares at $561.00 per share— a 40% loss in a matter of weeks.

25. Rocha did not keep investor funds in separate accounts. And he did not maintain records of what happened to his investors' money in his own account. For example, Rocha did not allocate any investment positions, gains, or losses among the investors.

26. Rocha also did not provide the investors with any tax-related documents, and reported all investment losses in his personal brokerage accounts on his own personal income tax returns.

27. Rocha did not routinely send account statements to the investors about their investments. Indeed, he couldn't because he did not maintain separate accounts for his investors and did not keep any records of how their money was spent. When investors inquired from time-to-time, Rocha prepared fake account statements. These fabricated monthly

statements contained the principal amount allegedly invested plus purported "earnings" of exactly 12% per month for a "total value" of the investment.  These fake statements gave the investors the impression that their money was secure and growing, whereas in reality Rocha was squandering most of the investor funds and otherwise sustaining investment losses.

28. Rocha corresponded repeatedly with an investor by text message about the purported 12% monthly returns.  This investor had given Rocha approximately $123,000 to invest in June 2021.  On July 2, 2021, Rocha texted the investor: "So you have balance 300K."  Starting in September 2021, the investor texted Rocha on a monthly basis confirming the 12% returns.  Rocha responded by giving a thumbs-up or heart sign on most of the messages.

29. This same investor continued giving Rocha money to invest through December 2021 for a total of $211,000.  On March 2, 2022, the investor texted Rocha: "As [of] 3/1/22 $1,066,240.  It's official my friend…Millionaire."  Rocha noted he "Loved" the message and wrote "Yep.  Congratulations."  The investor responded: "Thank you for everything, it really means a lot to me."  In reality, as of March 1, 2022, Rocha had only approximately $68,000 total across all of his bank and brokerage accounts.

**C. Rocha Misused the Investors' Funds**

30. Rather than investing in securities as promised, Rocha kept and spent the majority of the investor funds in his personal bank account to feed his gambling habit and a new luxury lifestyle.  During the time of his scheme, Rocha withdrew more than $200,000 at casinos and spent tens of thousands of dollars at expensive restaurants, designer clothing stores and the Apple store.

31. Rocha also took luxury gambling trips to Las Vegas and Miami.  For example, in late April and early May 2021, Rocha deposited approximately $70,000 from three investors into his personal bank account.  In the following weeks, Rocha transferred just $20,000 into his

brokerage account (largely to offset his margin balance) while withdrawing $3,000 at a local casino and taking a luxury trip to Miami. On that trip Rocha spent over $6,000 at a luxury hotel, $3,500 to charter a yacht, over $1,000 at a casino, and almost $800 on airline tickets.

32. In Ponzi-scheme fashion, Rocha also used later-invested funds to pay small amounts back to earlier investors. Rocha made these payments to give these investors the false impression their funds were secure and available on demand.

33. Rocha's investors lost virtually everything they invested with Rocha—none have been made whole much less earned a profit. Rocha's personal bank and brokerage accounts have minimal balances today. In the end, Rocha lived a lavish lifestyle at his investors' expense all the while repeatedly lying to his investors about their purported account balances and investment returns.

## FIRST CLAIM FOR RELIEF

### (Violations of Section 17(a) of the Securities Act)

34. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 above.

35. By reason of the foregoing, Rocha, directly or indirectly, acting intentionally, knowingly, recklessly, or negligently, by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, in the offer or sale of securities: (a) has employed or is employing devices, schemes, or artifices to defraud; (b) has obtained money or property by making untrue statements of material fact or omitting material facts necessary to make the statements made not misleading; or (c) has engaged or is engaging in transactions, practices, or courses of business which operated as a fraud or deceit upon the purchasers of such securities.

36. By reason of the conduct described above, Rocha has violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 thereunder)

37. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 above.

38. By reason of the foregoing, Rocha, directly or indirectly, acting intentionally, knowingly or recklessly, in connection with the purchase or sale of securities, by use of the means or instrumentalities of interstate commerce or the facilities of a national securities exchange or the mail: (a) has employed or is employing devices, schemes, or artifices to defraud; (b) has made or is making untrue statements of material fact or has omitted or are is to state material fact(s) necessary to make the statements made not misleading; or (c) has engaged or is engaging in acts, practices, or courses of business which operate as a fraud or deceit upon certain persons.

39. By engaging in the conduct described above, Rocha has violated, and unless enjoined will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF

### (Violation of Sections 206(1) and 206(2) of the Advisers Act)

40. The Commission repeats and incorporates by reference the allegations in paragraphs 1-33 above.

41. At all relevant times, Rocha was an "investment adviser" within the meaning of Section 202(a)(11) of the Advisers Act [15 U.S.C. §80b-2(a)(11)].

42. By reason of the foregoing, Rocha directly or indirectly, acting intentionally, knowingly, recklessly, or negligently and by use of the means or instruments of transportation or communication in interstate commerce or by the use of the mails, as an investment adviser: (1) has employed or is employing any device, scheme, or artifice to defraud a client or prospective client; and (2) has engaged or is engaging in any transaction, practice, or course of business which operates as a fraud or deceit upon a client or prospective client.

43. By engaging in the conduct described above, Rocha violated and, unless enjoined, will continue to violate, Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2)].

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that this Court:

A. Enter a permanent injunction restraining Rocha and any persons in active concert or participation with him who receive actual notice of the injunction by personal service or otherwise, including facsimile transmission or overnight delivery service, from directly or indirectly engaging in the conduct described above, or in conduct of a similar purport and effect, in violation of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)]; Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder; and Sections 206(1) and 206(2) of the Advisers Act [15 U.S.C. §§80b-6(1), 80b-6(2)];

B. Enter a permanent injunction restraining Rocha from, directly or indirectly, including, but not limited to, through any entity owned or controlled by Rocha, participating in the offer or sale of any security to investors or potential investors, including but not limited to soliciting or accepting funds from any investor or potential investor in the offer or sale of any securities, provided, however, that such injunction shall not prevent Rocha from purchasing or selling registered securities for his own personal account;

C. Require Rocha to disgorge his ill-gotten gains, plus pre-judgment interest;

D. Require Rocha to pay appropriate civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d), Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)], and Section 209(e) of the Advisers Act [15 U.S.C. §80b-9(e)];

E. Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F. Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

The Commission demands a jury in this matter for all claims so triable.

Respectfully submitted,

SECURITIES AND EXCHANGE COMMISSION

By its attorneys,

/s/ Alfred A. Day
Alfred A. Day (MA BBO No. 654436)
Senior Trial Counsel
Boston Regional Office
33 Arch Street, 24th Floor
Boston, MA 02110
(617) 573-4537
DayA@sec.gov

Dated: August 3, 2023